**E-FILED**
Friday, 22 July, 2016  02:48:40 PM
Clerk, U.S. District Court, ILCD

## IN THE UNITED STATES DISTRICT COURT
## FOR THE CENTRAL DISTRICT OF ILLINOIS
## SPRINGFIELD DIVISION

| | | |
|---|---|---|
| CHRISTOPHER COLEMAN, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 15-cv-1100 |
| | ) | |
| CITY OF PEORIA, et al., | ) | |
| | ) | |
| Defendants. | ) | |

## OPINION

TOM SCHANZLE-HASKINS, U.S. MAGISTRATE JUDGE:

This matter comes before the Court on Plaintiff's Motion to Quash Defendants' Subpoena to IDOC and for a Protective Order (d/e 66) (Motion 66), and Third Party Dana Holland's Motion to Quash Defendants' Subpoena to the Illinois Department of Corrections for Audio Recordings of Dana Holland's Telephone Calls (d/e 70) (Motion 70) (collectively Motions). For the reasons set forth below, the Motions are ALLOWED IN PART.  The requests to quash the subpoenas are denied; however, the material produced pursuant to the subpoenas shall be Confidential Information subject to the terms of the Confidential Matter Protective Order entered August 17, 2015 (d/e 30) (Protective Order).

BACKGROUND

In 1995, Plaintiff Christopher Coleman was convicted of home invasion and sexual assault that occurred in 1994 in Peoria, Illinois ("1994 Home Invasion" or "Crime").  A group of men committed the 1994 Home Invasion.  James Coats and Robert Nixon were arrested at the scene and were convicted for their participation in the Crime.  Coleman was arrested and tried.  Two of the victims identified Coleman as one of the perpetrators.  A thirteen year old boy, Anthony Brooks, testified that he participated in the Crime as a look out.  One of the victims testified that a boy acted as look out.  Brooks testified on direct examination that Coleman participated in the Crime, but testified on cross examination that Coleman was not involved.  Brooks testified on cross examination that City of Peoria (Peoria) Police Detective Patrick Rabe (Detective Rabe) threatened Brooks that he would not see his family again unless he identified Coleman as one of the perpetrators.  Detective Rabe testified that he did not threaten Brooks, and that Brooks identified Coleman as a perpetrator.  People v. Coleman, 2013 IL 113307 ¶¶ 4-34, 996 N.E.2d 617, 620-26 (Ill. 2013).

Nixon testified at trial that he, James Coats, Robert McKay, Lamont Lee, and a man named Drey committed the 1994 Home Invasion.  Nixon testified that Coleman was not involved in the Crime.  James Coats did not

testify.  Coleman presented alibi witnesses, and he testified that he did not participate in the Crime.  The jury found Coleman guilty of home invasion, aggravated criminal sexual assault, armed robbery, and residential burglary.  Id., at 620-27, ¶¶ 35-43.

At a hearing on Coleman's post-trial motions, James Coats testified that he, Nixon, Robert McKay, Lamont Lee and a man named Drey committed the 1994 Home Invasion.  Coats testified that Coleman was not involved.  The trial court credited the trial testimony rather than the testimony of Nixon and James Coats.  The trial court denied the post-trial motions and sentenced Coleman to 30 years.  Id., at 628, ¶¶ 44-46.

At the 2010 post-conviction hearing, James Coats, Lamont Lee, Robert McKay, and Coats's brother, Robert Coats, testified that they participated in the 1994 Home Invasion and Coleman was not involved. Deondre Coleman, a/k/a Drey testified that he went with the group to the house where the Crime was committed, but stayed outside and did not participate in the Crime.  Deondre Coleman testified that Coleman was not involved.  Brooks testified in 2010 that he did not participate in the 1994 Home Invasion.  Brooks testified that Detective Rabe threatened him and forced him to testify that he participated in the Crime and that Coleman also was a perpetrator.  Another suspect, Robert Nickerson, was arrested for

the Crime, but the charges were dropped.  Nickerson testified that while in custody in 1994, Coats told him that Coleman was not involved in the Crime.  Another suspect named Mark Roberson testified that he was arrested and released when he had an alibi.  Detective Rabe testified that he did not threaten Brooks.  Detective Rabe testified that Brooks stated that Coleman was a perpetrator in the Crime.  Detective Rabe testified that Coats and Nixon denied any involvement in the Crime when they were interviewed during the investigation.  The trial court denied post-conviction relief, and the Appellate Court affirmed.  Id., at 628-33, ¶¶ 47-78.

On March 13, 2014, the Illinois Supreme Court reversed Coleman's conviction and granted Coleman a new trial based on Illinois law.  The Court found that under Illinois law a new trial was required because the 2010 post-conviction testimony of James Coats, Robert McKay, Lamont Lee, Robert Coats, and Deondre Coleman constituted new evidence and were "conclusive enough that another trier of fact would probably reach a different conclusion."  People v. Coleman, 2013 IL 113307, ¶¶ 102, 113-16, 996 N.E.2d 617, 639, 641-42 (Ill. 2013).  Coleman was released from prison.

On March 13, 2014, the Peoria County State's Attorney dropped the charges against Coleman.  On March 5, 2015, the Peoria County, Illinois,

Circuit Court issued Coleman a certificate of innocence.  Amended
Complaint (d/e 51), ¶¶ 48-52.

On March 11, 2015, Coleman brought this action against Peoria;
Detective Rabe; and Peoria Police Officers Terry Pratt, Timothy Anderson,
and Michael Ford for violation of his constitutional rights during the
investigation and prosecution of the 1994 home invasion (1994
Investigation).  Coleman also brought claims against Peoria for violation of
his constitutional rights under the principles set forth in Monell v.
Department of Social Services of City of New York, 436 U.S. 658, 694-95
(1978) (Monell Claims).  Amended Complaint, Counts I-IV.  Coleman also
alleged supplemental state law claims based on the investigation and
prosecution.  Amended Complaint, Counts V-X.  Detective Rabe died
during the pendency of this case.  Michael Rabe, as executor of Detective
Rabe's estate, has been substituted in as a defendant.  Text Order entered
February 29, 2016.

Coleman disclosed Nixon, James Coats, Roberson, McKay, Brooks,
Robert Coats, and Deondre Coleman as possible witnesses in this case.
Deposition testimony taken during discovery indicates that Coleman had
telephone conversations with Nixon, James Coats, Roberson, McKay,
Brooks, Robert Coats, and Deondre Coleman while Coleman was in the

custody of the Illinois Department of Corrections (IDOC).  Coleman made some of these calls through his sister, Kim Coleman, and others.  Coleman called his sister or others, and they would set up a three-way call with Coleman, who was in custody, and one of the witnesses listed above. Other times, Coleman made the call to Kim Coleman while one of these disclosed witnesses was with Kim Coleman, and the witness spoke to Coleman.  See Defendants' Response to Motions to Quash Defendants' Subpoenas to IDOC and Plaintiff's Motion for Protective Order (d/e 74) (Response), at 4-5, Exhibits D-H, Discovery Deposition Excerpts; Exhibit I, Center for Wrongful Conviction Memorandum dated March 4, 2014; Exhibit J, Excerpt of Testimony at Certificate of Innocence Hearing on September 19, 2014.

On May 25, 2016, Defendants issued subpoenas to correctional facilities operated by the IDOC to produce recordings of telephone calls relating to Coleman, McKay, Nixon, Brooks, Roberson, Robert Coats, and James Coats while they were incarcerated in those facilities from 1994 to the present; and telephone calls relating to Dana Holland while he was incarcerated from January 1, 2002, through June 3, 2003.  Motion 66, Exhibit A, Subpoenas.  Holland was Coleman's cell mate from January 1, 2002, to June 3, 2003.  Holland allowed Coleman to make calls under his

phone account during this time period.  See Response, at 15.  The IDOC recorded all telephone calls made by inmates.  Coleman does not dispute that he and other inmates knew that their telephone calls were recorded.

Coleman and Holland have moved to quash the subpoenas.  The IDOC has not filed a motion to quash, and none of the other individuals named in the subpoenas have filed motions to quash.  Coleman and Holland move to quash the subpoenas on the grounds that the subpoenas are overly broad and interfere with their rights to privacy.  The Defendants respond that Coleman and Holland have no standing because the subpoenas are directed at the IDOC, not them, and they had no expectation of privacy in the content of calls that they knew were being recorded by the IDOC.

The Defendants argue that they are entitled to discover the substance of Coleman's conversations with these potential witnesses during his incarceration.  The Defendants state further that they have no way to narrow the subpoenas to calls made to specific recipients because Coleman made some of these calls through third parties, such as his sister Kim Coleman.  Response, at 12.

ANALYSIS

The Defendants challenge Coleman and Holland's standing to move to quash a subpoena directed to a third party.  Generally, a party lacks standing to move to quash a subpoena directed at a third party unless the party has a claim of privilege attached to the information sought or unless the production of the information sought implicates a party's privacy interests.  See Jump v. Montgomery County, Illinois, 2015 WL 6558851, at *1 (C.D. Ill. October 29, 2015); Malibu Media, LLC v. John Does 1-14, 287 F.R.D. 513, 516 (N.D. Ind. 2012).   A person needs only a minimal privacy interest to establish standing to move to quash a subpoena.  Malibu Media, 287 F.R.D. at 516.  The Court finds that Coleman and Holland would have reasonably expected prison and other public officials would have access to recordings of their phone calls, but would not have expected that other parties would have access such as parties in a civil proceeding.  The Court finds that they have standing to move to quash the subpoena for the calls that they made.

The Defendants argue that Coleman and Holland have no standing because, as prisoners, they had no expectation of privacy in those calls for purposes of the Fourth Amendment.  The Fourth Amendment does not apply to determining standing to challenge a subpoena in a civil

proceeding.  See Syposs v. United States, 181 F.R.D. 224, 227 (W.D. N.Y. 1998).  Coleman and Holland must only show enough of a privacy interest to invoke the Court's discretionary authority to control discovery in a civil case.  Prisoners would reasonably expect the access to recordings of their telephone calls to be limited to prison officials, law enforcement officials, and other public officers with a bona fide need for such access.  Prisoners would reasonably expect that their conversations would not be handed over to civil litigants.  Coleman and Holland have demonstrated the minimal interest necessary to establish standing to challenge the subpoenas for recordings of calls that they made.  See Malibu Media, 287 F.R.D. at 517.

Coleman and Holland move to quash the subpoenas because they are overly broad and impose an undue burden.  The scope of material that may be secured by Subpoena is as broad as that permitted under the discovery rules.  See Graham v. Casey's General Stores, 206 F.R.D. 251, 253-54 (S.D. Ind. 2002).   Relevant information under the discovery rules consists of admissible evidence or information that is reasonably calculated to lead to the discovery of admissible evidence.  Fed. R. Civ. P. 26(b)(1). Coleman and Holland have the burden of proof on this Motion.  See Malibu Media, LLC, 287 F.R.D. at 516.

Coleman and Holland argue that the production of all of their calls interferes with their rights to privacy because many of the calls produced have no relationship to this case.  A production of all of their calls, therefore, will result in the disclosure of irrelevant personal information.[1] The Defendants counter that they have no way to identify the relevant and irrelevant calls without listening to each recording.

The Court, in its discretion, determines that Coleman and Holland have failed to demonstrate that the burden on them from the disclosure of personal, otherwise private information is sufficient to warrant quashing the subpoenas for the calls that they made.  The discovery shows that Coleman called his possible witnesses while he was in prison.  Coleman made the calls directly and indirectly through third parties.  The Defendants are entitled to discover the content of those calls.

The recorded calls contain the most accurate information available about the content of those calls.  The relevant calls cannot be identified without listening to the recordings.  The impact on their privacy interests is less than a private citizen making phone calls at home because Coleman and Holland knew that the calls were recorded and could be heard by some other individuals.   In light of the relevance of the calls sought by the

---

[1] Coleman and Holland present no evidence that the production of the calls presents a significant burden on IDOC.  The IDOC has not challenged the subpoenas.

Defendants, and the difficulty in identifying the relevant calls, Coleman and Holland's lessened privacy interests is insufficient to quash the subpoenas. Coleman and Holland's privacy interests can be protected by making the recordings Confidential Information subject to the terms of the Protective Order.  The Protective Order prohibits disclosure of the content of the calls, except to the limited extent that disclosure of relevant calls will be necessary to litigate this case.

Coleman relies on the opinion in <u>Jump</u> to argue that the production would be unduly burdensome.  The <u>Jump</u> opinion does not apply to this circumstance.  The subpoena in <u>Jump</u> sought the home phone records of the <u>Jump</u> plaintiff's mother from her phone company to discover whether a specific phone call between plaintiff and daughter occurred.  The mother testified about the call in her deposition.  The defendants did not know the date of the call, and so, the records were not likely to prove or disprove whether the call occurred.  <u>Jump</u>, 2015 WL 655881, at *2-3.  Further, the phone records sought in <u>Jump</u> did not contain information on the content of a call.  The recordings here contain the actual content of the calls.  The recordings are far more likely to lead to discoverable evidence than the call records in <u>Jump</u>.

Coleman also relies on the opinion in <u>Special Markets Ins.</u>
<u>Consultants, Inc. v. Lynch</u>, 2012 WL 156538 (N.D. Ill. May 2, 2012).  The
<u>Special Markets</u> case also does not apply to this circumstance.  The
plaintiff in <u>Special Markets</u> subpoenaed all of the defendants' emails from
their email service providers Yahoo and Verizon to discover a limited
number of relevant emails.  The <u>Special Markets</u> court quashed the
subpoenas because the plaintiff could secure the emails directly from the
defendants.   In this case, the Defendants cannot secure the relevant
recorded conversations from Coleman because he has no recordings.  The
Defendants can only get the recordings from the IDOC.  The Defendants
could not narrow the subpoena by limiting the calls to certain call recipients
because Coleman made calls through third parties using three-way calling.
The relevant recordings cannot be identified without listening to them.  The
<u>Special Markets</u> opinion does not apply.

Coleman and Holland suggest that Coleman's counsel should listen
to the calls, make a log of all calls, and identify the relevant calls that would
be produced to the Defendants.  Coleman's proposal will only result in
additional discovery litigation and delay.  The review by Coleman's counsel
will take time.  The Defendants will invariably dispute whether additional

calls should be produced.  The protective order will protect Coleman and Holland's privacy interests and speed the resolution of this matter.

Coleman lacks standing to challenge the subpoenas directed at the calls made by McKay, Coats, Nixon, Brooks, Roberson, and Robert Coats. Coleman and Holland have no privacy interests in those telephone calls. The Court, however, will make those calls subject to the Protective Order in order to avoid improper disclosure of personal information.  The documents produced shall be considered Confidential Information as designated in paragraph two of the Protective Order, even if the documents are not so designated by the producing party.  Any copies of the documents produced shall be designated as Confidential Information pursuant to paragraph three of the Protective Order.

THEREFORE, Plaintiff's Motion to Quash Defendants' Subpoena to IDOC and for a Protective Order (d/e 66), and Third Party Dana Holland's Motion to Quash Defendants' Subpoena to the Illinois Department of Corrections for Audio Recordings of Dana Holland's Telephone Calls (d/e 70) are ALLOWED IN PART.  The requests to quash the subpoenas are denied; however, the material produced pursuant to the subpoenas

shall be Confidential Information subject to the terms of the Confidential

Matter Protective Order entered August 17, 2015 (d/e 30).

ENTER:  July 22, 2016


_s/ Tom Schanzle-Haskins_
UNITED STATES MAGISTRATE JUDGE