UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
PEORIA DIVISION

| | |
|---|---|
| CHRISTOPHER COLEMAN, | ) |
| Plaintiff, | ) |
| v. | ) Case No. 1:15-cv-01100-SLD-TSH |
| CITY OF PEORIA, MICHAEL RABE, in the capacity as the executor of the ESTATE OF PATRICK K. RABE, TERRY PYATT, TIMOTHY ANDERSON, MICHAEL FORD, and other as-yet unidentified Peoria Police Officers, | ) |
| Defendants. | ) |

ORDER

Before the Court is Defendants' Motion to Bifurcate and Stay Discovery and Trial of Plaintiff's Municipal Liability Claims, ECF No. 35, and Defendants' renewed motion to dismiss Count IV of the Amended Complaint, ECF No. 52. For the following reasons, the motion to stay discovery is DENIED, and the motion to dismiss GRANTED.

**BACKGROUND[1]**

Plaintiff Coleman was convicted of having committed an armed robbery and sexual assault in Peoria, Illinois in 1994. He alleges that Defendants Rabe, Pyatt, Anderson, and Ford, officers of the Peoria Police Department at the time,[2] got the victim of the assault to identify Coleman as the perpetrator via a suggestive photo identification and lineup, and that they

---

[1] The facts recounted here are taken unless otherwise noted from Plaintiff's Amended Complaint, ECF No. 51.

[2] Patrick Rabe was a Peoria Police Department Detective alleged to have participated in the activities described in the Amended Complaint. The executor of his estate is named as a defendant.

1

pressured a 12-year-old child, Anthony Brooks, to claim that Coleman was the perpetrator. Coleman alleges that although he was uninvolved in the crime, Defendants' actions resulted in his conviction and 19-year incarceration. In 2013, after an evidentiary hearing, the Illinois Supreme Court unanimously reversed the conviction, after which the Peoria County State's Attorney dismissed all charges against Coleman.

Coleman brought suit in this Court on March 11, 2015, *see* Compl., ECF No. 1, and alleges (I) violations of his Constitutional right to due process pursuant to 42 U.S.C. § 1983, Am. Compl. 9–10; (II) a conspiracy to deprive him of that right, pursuant to 42 U.S.C. § 1983, *id.* at 10–11; (III) a failure to intervene by at least one of the officer defendants pursuant to 42 U.S.C. § 1983, *id.* at 11; (IV) a malicious prosecution claim pursuant to 42 U.S.C. § 1983,[3] *id.* at 12; (V) a state law malicious prosecution claim, *id.* at 13; (VI) a state law claim for intentional infliction of emotional distress, *id.* at 13–14; (VII)[4] a state law civil conspiracy claim, *id.* at 14; (VIII) a state law claim against the City of Peoria ("the City") articulating a theory of respondeat superior liability for the actions of its servants, *id.* at 14; and (IX) a state law claim (if it is a claim[5]) observing that Illinois law requires public entities to indemnify employees for compensatory damages in tort, *id.* at 15. Count I, the due process claim, is evidently intended to be brought

---

[3] The malicious prosecution claim is the subject of Defendants' renewed motion to dismiss, discussed *infra*.

[4] Plaintiff numbers this count "VIII," but appears to have skipped the number seven in his counting.

[5] Theories of liability that differ only in the remedy sought, or counts that merely name a particular remedy or means of satisfying a judgment, need not and should not be pleaded as separate counts. *See* Fed. R. Civ. P. 54(c). The Seventh Circuit has disapproved this needlessly duplicative fashion of pleading:

> Although the analysis of the indemnification claims for Counts VII and IX differs, the ultimate result is the same. Both those counts raise claims under § 1983. (Indeed, since they seem to differ only on remedy, they did not need to be brought as separate claims but we disregard this pleading flaw since even if an objection had resulted in a stricken count, the available remedies would have stayed the same under the surviving count.)

*Chicago Hous. Auth. v. Fed. Sec., Inc.*, 161 F.3d 485, 488 (7th Cir. 1998). *See also Collier v. Ledbetter*, No. 4:14-CV-4103-SLD-JEH, 2015 WL 5440672, at *2 (C.D. Ill. Sept. 15, 2015) ("Plaintiff has, in short, confusingly included his heterogeneous wants, along with his claims for relief, under the heading of 'Count.'").

against not only the defendant officers, but also against the City, Am. Compl. ¶¶ 62–64, pursuant to *Monell v. Department of Social Services of City of New York*, 436 U.S. 658 (1978).

## DISCUSSION

### I.  Motion to Dismiss

Defendants' renewed motion to dismiss can be quickly disposed of. The Court previously granted the same motion as to the original Complaint's Count IV, dismissing that count because "the Seventh Circuit does not permit an action for malicious prosecution under § 1983 if a state remedy exists, which it does in Illinois." Mar. 23, 2016 Order 1, ECF No. 44. At the time, Plaintiff conceded that such federal claims are not permitted in this circuit, and explained that he raised it in order to preserve it, with a hopeful eye to the possibility of the Supreme Court's disagreeing with the Seventh Circuit on the matter. Resp. Mot. Dismiss 1–3, ECF No. 24. Plaintiff's Amended Complaint, however, contains the same claim for malicious prosecution under federal law. Am. Compl. 12. Plaintiff now explains, in response to a motion to dismiss renewed on identical grounds, that, while the Complaint was merely amended to properly re-name a party, he "re-pled," Resp. Mot. Dismiss 1, ECF No. 54, the malicious prosecution count in order to preserve it for appeal.

However, as the Seventh Circuit has repeatedly explained, litigants do not need to replead dismissed claims in order to preserve them for appeal. *See Bastian v. Petren Res. Corp.*, 892 F.2d 680, 683 (7th Cir. 1990) ("It is not waiver—it is prudence and economy—for parties not to reassert a position that the trial judge has rejected. Had the plaintiffs repleaded their [original claim] without alleging loss causation, the judge would have dismissed the charge, not only with prejudice but with annoyance."); *see also Smith v. Nat'l Health Care Services of Peoria*, 934 F.2d 95, 98 (7th Cir. 1991) ("This court in *Bastian* stated that dismissed claims need not be

3

included in an amended complaint, because the final judgment brings up all previous rulings in the case."); *Serritella v. Markum*, 119 F.3d 506, 512 n.6 (7th Cir. 1996) ("[Plaintiff's counsel's] concern that he was required to replead the dismissed claim lest he be found to have waived the issue on appeal has no foundation in the law of this Circuit (or any other of which we are aware)."). Coleman's "hope," Resp. Mot. Dismiss 3—that supplementing the dismissed claim with an explanatory footnote would permit the claim to be repleaded—is inadequate to "obviate the need for the instant motion," *id.* There is no basis in law to bring the claim. It was dismissed before for this reason, and is dismissed again for this reason, with prejudice.

## II. Motion For a Separate Trial

### a. Legal Framework on a Motion For a Separate Trial

"For convenience, to avoid prejudice, or to expedite and economize, the court may order a separate trial of one or more separate issues, claims, crossclaims, counterclaims, or third-party claims." Fed. R. Civ. P. 42(b). A court's decision to order a separate trial of issues or claims is "at the court's discretion and will be overturned only upon a clear showing of abuse." *Houskins v. Sheahan*, 549 F.3d 480, 495 (7th Cir. 2008). Unlike severance of claims pursuant to Federal Rule of Civil Procedure 21, separate trials of issues or claims under Rule 42(b) typically do not create a separate action, and result in a single judgment. *Houseman v. U.S. Aviation Underwriters*, 171 F.3d 1117, 1122 n.5 (7th Cir. 1999). Thus, in determining whether to grant a motion for a separate trial, a court must weigh the possible benefits in efficiency and fairness of separate trials against the possible losses in efficiency and fairness. *See Allstate Ins. Co. v. Vizcay*, 826 F.3d 1326, 1333 (11th Cir. 2016) (describing the factors courts should consider as including "the risk of inconsistent adjudications of common factual and legal issues, the burden on parties, witnesses and available judicial resources posed by multiple lawsuits, the length of

time required to conclude multiple suits as against a single one, and the relative expense" of the alternatives (quoting *Hendrix v. Raybestos–Manhattan, Inc.*, 776 F.2d 1492, 1495 (11th Cir. 1985))).

### b. Analysis

Defendant asks that the constitutional claim against the City asserted in Count 1 be severed from the rest of the claims, and proceedings on that claim stayed while litigation proceeds on the other claims. Mot. Stay 1. Defendants argue that, while Coleman brings federal constitutional claims against individual officer defendants and against the City, the claim against the City cannot succeed unless Coleman first succeeds in showing that at least one individual defendant violated his constitutional rights. Mot. Stay 7. Since all individual defendants are indemnified by the City, the reasoning goes, Coleman will not get any more or better recovery by proceeding with the claim against the City, and is not any more likely to succeed on that claim than on the claims against the individuals, since success on at least one of those claims is a predicate of success on the claim against the City. The City thus urges that the claim against it is redundant and inefficient; the costs, both to the City in supplying discovery on the claim and to the Court in supervising that discovery, are asserted to be significant. *Id.* Additionally, Defendants argue that if the claim against the City is tried at the same time as those against the individual defendants, prejudice may accrue to the individuals if evidence of the City's hypothetically many other misdeeds is presented to a jury alongside the officers' case. *Id.* at 13–14.

Coleman responds that his constitutional claim against the City is not redundant because he could conceivably fail to recover against the individual defendants, who have raised the defense of qualified immunity, but could then still be entitled to recover from the City, Resp.

Mot. Stay 7–9, ECF No. 42. He also argues that the age and nature of the conspiracy alleged create the possibility that the City might be found liable without any individual defendant ever being found liable, *id.* at 9–10. Coleman further argues that the discovery he seeks against the city is not so burdensome as the City suggests. *Id.* at 10–14. And Coleman contends that the claimed prejudice that might accrue to the individual defendants is too speculative to weigh in favor of separate trials. *Id.* at 14–15.

A plaintiff bringing a *Monell* claim against a city often cannot succeed without showing that at least one individual city employee violated his constitutional rights. This is so even though municipal entities cannot be vicariously liable under 42 U.S.C. § 1983 for the constitutional torts of their employees, but rather can only be liable for harms of a constitutional dimension caused by their policies, customs, or practices. *Monell*, 436 U.S. at 694–95. The injury to a plaintiff for which a municipal entity becomes liable under *Monell* usually has to be inflicted by a person, to whom liability under § 1983 usually also accrues. If, in such a case, all individual defendants are found not to have inflicted an injury of constitutional dimension against the plaintiff, then the plaintiff was not harmed at all, and suit against the municipality will be unavailing; by the same token, since municipalities are required by law to indemnify their employees against such suits, recovery against an individual defendant will be just as extensive as recovery against the municipal defendant, and the claim against the latter equally unnecessary to make the plaintiff whole. *See Swanigan v. City of Chicago*, 775 F.3d 953, 962 (7th Cir. 2015) ("If a § 1983 plaintiff seeks only monetary relief, and if a municipal defendant is willing (or required) to indemnify individual defendants for compensatory damages as well as an award of attorney's fees and costs, a *Monell* claim against the municipality will offer a prevailing plaintiff no additional remedy (aside, perhaps, from nominal damages)."). In most cases, therefore, the

6

values identified in Rule 42(b)—of convenience, expeditiousness, and economy—work strongly in favor of separating and staying the *Monell* claims. *Id. See, e.g.*, *Powell v. Pauley*, No. 4:15-CV-04013-SLD-JEH, 2015 WL 6971615 (C.D. Ill. Nov. 10, 2015) (ordering bifurcation and stay where a Rock Island, Illinois police officer was alleged to have used excessive force in executing an arrest).

However, in some civil-rights cases, a plaintiff alleges harm traceable to the policies of a municipality for which no individual defendant is liable, either because no such defendants are ultimately found to be named, or because no defendant is individually liable for the harm nevertheless worked by the policy. *See, e.g.*, *Thomas v. Cook Cnty. Sheriff's Dep't*, 604 F.3d 293, 305 (7th Cir. 2010) (explaining that although plaintiff's decedent died of meningitis while in the care of a the defendant county's jail, the county alone could be liable under § 1983 for its deficient policies even where no individual defendant was liable, so long as there was no "inconsistency" in the verdicts rendered). In other cases, individual defendants may have violated a plaintiff's civil rights, but be themselves shielded from suit by the doctrine of qualified immunity, while their municipal employer enjoys no such protection. *See Anderson v. Creighton*, 483 U.S. 635, 638–40 (1987) (enunciating the doctrine of qualified immunity); *Elrod v. City of Chicago*, No. 06 C 2505, 2007 WL 3241352, at *4 (N.D. Ill. Nov. 1, 2007) ("In some cases the assertion of a defense of qualified immunity . . . raises the potential scenario in which a plaintiff who proves a constitutional violation loses his claim against the individual defendant because of the defense of qualified immunity, but could prevail against the City under *Monell*[.]").

Here, Defendants' argument that a verdict for the individual officer defendants would be inconsistent with a verdict against the city fails for at least two obvious reasons, observed in detail in Plaintiff's briefing.[6]

First, the individual officers have asserted qualified immunity as an affirmative defense, Answer Am. Compl. 24, ECF No. 53, and, unlike in other cases where the defense is raised, there is reason to think it likely that Coleman might succeed in showing violations of his rights, but be foiled by the doctrine as against the individual defendants. Qualified immunity is an absolute immunity to suit enjoyed by government officials who violate someone's constitutional rights, but do so in a way that "could reasonably have been thought consistent with the rights they are alleged to have violated." *Anderson*, 483 U.S. at 638. The qualified immunity inquiry turns on whether the right violated was "clearly established" at the time of its violation. *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). The right must be framed at the appropriate level of generality for the inquiry to make sense; that is, it must be framed as neither too general—a right to due process of law—nor too specific—the "very action in question" need not have been previously litigated, *Anderson*, 483 U.S. at 640. *See id.* ("[T]he right the official is alleged to have violated must have been 'clearly established' in a more particularized, and hence more relevant, sense: The contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right."). In cases where the facts alleged, if true, describe a simple and clear violation of an obviously established right, the qualified immunity defense is unlikely to be availing. Most paradigmatic of this type, perhaps, are claims of absurdly excessive force during a routine search or arrest. *See, e.g.*, *Milan v. Bolin*, 795 F.3d

---

[6] Defendants term the possibility that differing verdicts as between the City and the individual defendants could be consistent with each other the "*Thomas* exception." Mot. Stay 7. The Court agrees with Plaintiff that the scenario in *Thomas* and the instant case, whereby a *Monell* claim could succeed against the city in the absence of success against an individual defendant, is not so much an exception to some type of rule as it is an example of the way in which two types of liability under § 1983 only correlate some of the time—but nothing here turns on the distinction.

8

726, 730 (7th Cir. 2015), cert. denied, 194 L.Ed. 2d 175 (2016) (affirming denial of qualified immunity where police engaged in the "[p]recipitate use of flash bangs to launch a search" of a home after "the most perfunctory, indeed radically incomplete, preliminary investigation"); *Pauley*, 2015 WL 6971615, at *2–3 (finding qualified immunity unlikely to apply where plaintiff alleged she was thrown to the ground and pepper sprayed for no reason); *Carr v. City of N. Chicago*, 908 F. Supp. 2d 926, 928, 931 (N.D. Ill. 2012) (explaining that defendants were not likely to prevail on qualified immunity defense in excessive force claim where officers broke up a domestic dispute and allegedly "beat [plaintiff] repeatedly before and/or after he was placed in handcuffs." (internal quotation marks omitted)).

Matters are otherwise in the instant case. Here, the defendant officers are alleged to have pressured or deceived witnesses in an unconstitutional manner at least three times, although the facts alleged also suggest that more such acts might emerge in discovery. The defendant officers have indicated that they intend to assert the defense of qualified immunity and argue that their acts were not contrary to clearly established law. It is unclear at this phase which officers are alleged to have participated in which portions of the conspiracy to implicate Coleman at which times, and what roles each may have played. Moreover, the legal standard surrounding impermissible lineup and photographic identifications is fact-intensive, and police routinely argue, sometimes with success, that they should be protected by the doctrine of qualified immunity for potential civil rights violations resulting from such lineups. *See United States v. Williams*, 522 F.3d 809, 810 (7th Cir. 2008) ("Eyewitnesses should be prevented from identifying a suspect in court only if the pretrial procedure 'was so impermissibly suggestive as to give rise to a very substantial likelihood of irreparable misidentification.'" (quoting *Simmons v. United States*, 390 U.S. 377, 384 (1968))); *Rojas v. Iannatto*, No. 01 CIV. 9131 (NRB), 2003

9

WL 169798, at *5 (S.D.N.Y. Jan. 24, 2003) (granting qualified immunity to officers alleged to have arranged an unduly suggestive precinct lineup). While it is unlikely that a police officer would enjoy qualified immunity for deliberately attempting to frame a defendant via a manufactured lineup or photo, *see Good v. Curtis*, 601 F.3d 393, 398 (5th Cir. 2010) (finding summary judgment for defendant officers unwarranted on qualified immunity grounds under such circumstances), the facts alleged are murkier here, and it is conceivable, as Coleman suggests, that at least some of the officers involved in the alleged activities might have engaged in activities pursuant to policy or followed orders that violated Coleman's rights in a way that a reasonable officer would not necessarily understand to violate Coleman's rights. These officers could enjoy the protection of qualified immunity, rendering dismissal of claims against them, alongside a judgment against the City on *Monell* grounds, not "inconsistent" with each other. *See Thomas*, 604 F.3d at 305. There is a more than nontrivial chance that qualified immunity would prevent Coleman from recovering against anyone other than the City. This militates against the separation of claims under Rule 42(b).[7]

      The second major reason why separation is inappropriate at this phase of the proceedings is the unusual complexity and age of this case. Part of the reason Coleman may have difficulty recovering against the principle alleged perpetrators of the misconduct in this matter is that the alleged ringleader is unavailable for deposition or other examination because he is deceased. The more minor players are not only more likely to be able to avail themselves of qualified immunity defenses, they are less likely to be found to have violated Coleman's rights—less likely than Rabe, and less likely than they themselves would have been at an earlier date, because

---

[7] It would not militate against separation if the City were willing to stipulate to its own liability if an employee defendant were found to have violated Coleman's constitutional rights. This is often done by defendant police departments to induce plaintiffs to spare them the burden of *Monell* discovery. *See Carr*, 908 F. Supp. 2d at 930–33. Coleman asserts without contradiction that Defendants have refused to enter into such a stipulation here, and that he would be willing to stay discovery on the *Monell* claim were such a stipulation to issue. Resp. Mot. Stay 15.

of the perishability of human memory. The age of the case has caused at least one (Anderson) to testify that he has no recollection of the actions he is alleged to have taken, and to rely instead on reference to the policies and practices of his employment. *See* Resp. Mot. Stay 5. As particular facts have staled or receded from the memories of the principles, the claims against them as individuals have become less susceptible of proof, rendering the *Monell* claim relatively more viable and attractive to Coleman, relying as it does not on a requirement that any of the particular defendants be able to be shown to have had a certain state of mind at a particular time, or have taken particular actions, but rather on a broader showing that as a result of the City's policies and procedures, Coleman was deprived of his right to due process of law. As explained above, cases where a discrete and recent act of individual misconduct is alleged tend to require a plaintiff to succeed against an individual municipal employee to succeed against the city. This is less true the more time passes, the more complex and diffuse the misconduct alleged is, and the more participants are alleged to have been involved in different capacities. And while the discovery on the *Monell* claim will undoubtedly add expense and time to the discovery, Coleman argues convincingly that there is significant overlap between the discovery sought against the individual defendants and against the City. Resp. Mot. Stay 13. This *Monell* claim is not a good candidate for separation and stay because it would not be convenient, expeditious, or economical in light of the specific facts at issue. Fed. R. Civ. P. 42(b).

    Finally, Defendants argue that prejudice would accrue to the individual officer defendants if the claims against them were tried alongside evidence of the City's other bad behavior. Mot. Stay 13–14. Defendants argue that "[p]resenting evidence to the jury regarding a [city-wide] policy, practice or custom involving multiple improper police actions poses a danger of undue prejudice to the defendant officers by creating the perception that the police department routinely

11

acts improperly, even if the officers acted properly[.]" Mot. Stay 13 (quoting *Veal v. Kachiroubas*, No. 12 C 8342, 2014 WL 321708, at *6 (N.D. Ill. Jan. 29, 2014)). The reasoning is puzzling. Evidence supporting the *Monell* claim would, indeed, have to be evidence tending to show a city-wide policy or practice conducing to police misbehavior. This would be relevant to the actions of the defendant officers, who would, assuredly, claim to have acted in conformity with sanctioned department policies and practices. Defendant municipalities are not people, and the actions of their employees in conformity with a policy tending to produce unconstitutional results is not forbidden propensity evidence pursuant to Federal Rule of Evidence 404(b) (something like this appears to be Defendants' unsupported drift). On the contrary, if the "perception" is fairly created that the department "routinely acts improperly," this routine action, for the reasons just explained, can and should be considered by a jury weighing whether these particular defendant officers acted improperly.

## CONCLUSION

Accordingly, Defendants' Motion to Bifurcate and Stay Discovery and Trial of Plaintiff's Municipal Liability Claims, ECF No. 35, is DENIED, and Defendants' renewed motion to dismiss Count IV of the Amended Complaint, ECF No. 52, is GRANTED.

Entered this 27th day of September, 2016.

s/ Sara Darrow<br>
SARA DARROW<br>
UNITED STATES DISTRICT JUDGE